UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUGHES COMMUNICATIONS INDIA
PRIVATE LIMITED,

                        Plaintiff,

                 -against-

THE DIRECTV GROUP, INC.,

                        Defendant.

Case No: 20-cv-2604

---

## COMPLAINT

Plaintiff Hughes Communications India Private Limited ("HCIPL") brings this complaint against Defendant The DirecTV Group, Inc. ("DTVG"), and alleges as follows:

## INTRODUCTION

1. HCIPL, an Indian satellite telecommunications company, is the former indirect subsidiary of DTVG. DTVG spun off HCIPL and other assets in April 2005. In doing so, DTVG expressly agreed to indemnify HCIPL and its directors and officers, *inter alia*, from liabilities arising from any proceeding initiated prior to closing of the transaction, and from tax liabilities for periods prior to the closing. Pursuant to this agreement, DTVG is obligated to indemnify HCIPL for tens of millions of dollars of satellite license fees and related penalties and interest owed to the Indian government under an October 2019 Indian Supreme Court ruling, and for other costs and expenses incurred in defending HCIPL. DTVG has improperly denied HCIPL's claim for indemnification. HCIPL brings this action to enforce DTVG's indemnification obligations.

## PARTIES

2. HCIPL is a private limited company organized under the laws of India, with its principal place of business in India.

3. DTVG is a corporation organized under the laws of the State of Delaware with its principal office in El Segundo, California.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2). Complete diversity of citizenship exists, as HCIPL is a citizen of India, and DTVG is a citizen of California and Delaware. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

5. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(1). DTVG is a resident of this District pursuant to 28 U.S.C. § 1391(c)(2), because it is subject to personal jurisdiction here. Personal jurisdiction exists based on, among other things, DTVG's express consent to jurisdiction and venue in New York in the Purchase Agreement referenced below.

## FACTS

*The Purchase Agreement*

6. On December 4, 2004, DTVG agreed to spin off the business and assets of DTVG's subsidiary, HNS Inc., pursuant to the terms of a Contribution and Membership Interest Purchase Agreement (the "Purchase Agreement"). The transaction closed April 22, 2005. Pursuant to the Purchase Agreement, HCIPL (then known as Hughes Escorts Communications Limited) and other HNS Inc. assets were transferred to a new entity that became Hughes Network Systems, LLC ("HNS LLC"), identified as "Newco" in the Purchase Agreement.

7. Section 9.5 of the Purchase Agreement provides that DTVG "shall indemnify, defend and hold harmless … the Newco Indemnified Persons from and against any and all Damages, whether or not involving a Third-Party Claim, arising out of, relating to or resulting from . . . the Excluded Liabilities . . . ."  As an Affiliate of HNS LLC, HCIPL is a "Newco Indemnified Person" with rights of indemnification under Section 9.5.  The Purchase Agreement defines "Damages" to mean in pertinent part "all claims, actions or causes of action, assessments, losses, damages, costs, Taxes, expenses, Liabilities, judgments, awards, sanctions, penalties, charges and amounts paid in settlement, including reasonable costs, fees and expenses of attorneys, experts, accountants, appraisers, consultants, witnesses, investigators and any other agents or representatives of such Person[.]"

8. Section 2.4(b) of the Purchase Agreement defines "Excluded Liabilities" to mean, *inter alia*, "(i) All Liabilities for Taxes of HNS [Inc.] . . . or the Transferred Subsidiaries" for specified periods and "(ix) All Liabilities arising out of Proceedings against HNS [Inc.] and its Affiliates involving the Business initiated prior to the Closing Date and not listed on" a specified disclosure schedule.

9. "Taxes" are defined in the Purchase Agreement as "all federal, state, local and foreign taxes . . . and installments of estimated taxes, assessments, deficiencies, levies, imposts, duties, withholdings, or other similar charges of every kind, character or description imposed by any Governmental Authority, and any interest, penalties or additions to tax imposed thereon or in connection therewith."

10. The Purchase Agreement defines "Proceeding" to include "any action, . . . proceeding (including any civil, criminal, administrative, investigative or appellate proceeding), . . . hearing, inquiry, . . . , audit, examination or investigation that is or has been

commenced, brought, conducted or heard at law or in equity or before any Governmental Authority."

***The India License Fees Proceeding***

11.     In 1994, the Government of India promulgated a "National Telecommunications Policy" under which the government liberalized the telecommunications sector and required telecommunications service providers to pay fixed license fees. Pursuant to this policy, HCIPL obtained a license to operate a data network over satellite using "VSAT" systems.[1] In 1999, HCIPL's VSAT license—as well as the licenses of various other telecommunications operators—was amended pursuant to a new government policy that eliminated the fixed license fees and instead required each telecommunications service provider to pay license fees based on a percentage of its adjusted gross revenues ("AGR").

12.     Prior to the April 22, 2005 closing of the Purchase Agreement, the Indian Department of Telecommunications ("DOT") initiated proceeding No. 17-7/2003-04/LF, in which it assessed additional fees, as well as interest, penalties and interest on penalties, under HCIPL's VSAT license. By written notice to HCIPL issued March 14, 2005, DOT assessed VSAT license fees based not only on HCIPL's AGR from satellite communication services under the VSAT license, but also on its AGR from other business covered by a separate license, called an "IP-1 Registration." The other business consisted of sales and services unrelated to the VSAT license. DOT's notice also imposed charges for interest, penalties and interest on penalties based on the deficiency or "shortfall" in HCIPL's previous VSAT license fee payments. The notice required HCIPL to remit payment within 10 days.

---

[1] "VSAT" refers to a "very small aperture terminal" comprised of a relatively small dish antenna located at the customer's premises and used for two-way satellite communications, along with associated customer premise equipment.

13. HCIPL did not do so. Instead, in March and April 2005, and continuing thereafter, HCIPL made written submissions objecting to the assessments and contending that license fees should be calculated on the basis of AGR for providing telecommunications services under the VSAT license. DOT rejected these objections, maintaining that it had properly calculated the unpaid fees by including AGR for other types of business.

14. HNS LLC provided notice of DOT's license fee proceeding to DTVG under the Purchase Agreement, and kept DTVG apprised of subsequent developments in the proceeding, including those described below.

*India Supreme Court Rulings*

15. In February 2006, HCIPL appealed DOT's assessments to the Telecom Disputes Settlement and Appellate Tribunal ("TDSAT"). Other telecommunications services providers against whom similar assessments had been issued also appealed to TDSAT.

16. After TDSAT ruled favorably in 2007 for HCIPL and other similarly situated telecommunications services providers, DOT appealed to the Indian Supreme Court. On October 11, 2011, the Supreme Court issued an opinion that addressed TDSAT's jurisdiction, after which proceedings resumed before TDSAT.

17. In 2015, TDSAT issued a judgment affirming DOT's assessments of license fees but concluding that, at most, DOT could only impose nominal interest, penalties and interest on penalties. HCIPL and other providers appealed TDSAT's ruling, as did DOT. During this period, DOT extended its assessments of license fees, as well as interest, penalties and interest on penalties, for successive annual periods, based on the same contested methodology it had adopted in or before March 2005. Each additional year of assessments became part of the ongoing TDSAT appeal proceedings.

18. On October 24, 2019, the Supreme Court of India issued an order affirming the license fee assessments imposed by DOT, including its imposition of interest, penalties and interest on penalties (the "October 2019 Order"). The October 2019 Order required HCIPL and other providers to make payment by January 23, 2020.

19. On November 23, 2019, HCIPL and other providers filed a petition asking the Supreme Court to reconsider its decision. The petition was denied on January 16, 2020. On January 22, 2020, HCIPL and other providers filed an application requesting that the Supreme Court modify the October 2019 Order and to extend the providers' payment deadline.

20. On February 14, 2020, the Supreme Court issued an order (the "February 2020 Order") directing "[t]he Managing Directors/Directors of the companies [including HCIPL] . . . to show cause why we should not initiate contempt proceedings against them for violating the [October 2019] order passed by this Court by not depositing the amount, on the next date of hearing." The February 2020 Order scheduled the next hearing for March 17, 2020, which was later rescheduled for March 18, 2020.

21. At the March 18, 2020 hearing, the Supreme Court ordered (the "March 2020 Order") that "the dues which were placed before us [in October 2019] have to be paid as we have affirmed those dues including interest and penalty, as ordered in the judgment." It also reiterated its threat to initiate contempt proceedings against directors of companies that did not make the required payment.

22. Under the October 2019 Order, HCIPL owes tens of millions of dollars in license fees and associated penalties, interest and interest on penalties (collectively, the "License Fee Award").

*The DOT Assessments Are DTVG's Responsibility*

23. DTVG is obligated to indemnify, defend and hold harmless HCIPL from and against the License Fee Award, as well as all related costs, expenses and losses, including without limitation attorney's fees and other costs incurred in defense ("License Fee Award Damages"), pursuant to Sections 9.5 and 9.7 of the Purchase Agreement.

24. The License Fee Award Damages represent "Damages … arising out of, relating to or resulting from … the Excluded Liabilities" under Section 9.5 of the Purchase Agreement. The License Fee Award Damages fall within the Purchase Agreement's definition of Damages because they are "assessments, losses, damages, costs, Taxes, expenses, Liabilities, judgments, awards, sanctions [and/or] penalties."

25. Section 9.7(b) of the Purchase Agreement provides that if DTVG "elects not to defend the Indemnified Party [HCIPL] against such Third Party Claim, then the Indemnified Party [HCIPL] may (but is not obligated to) defend such Third Party Claim by appropriate Proceedings and may (but is not obligated to) control such defense, at the expense of the Indemnifying Party."  As DTVG elected not to defend HCIPL, HCIPL's costs of defending likewise fall under Section 9.7(b).

26. The License Fee Award Damages arise out of, relate to or result from Excluded Liabilities specified in Section 2.4(b) of the Purchase Agreement.  In particular, and without limitation, they arise out of, relate to or result from "Liabilities for Taxes of HNS [Inc.] … or the Transferred Subsidiaries" for specified periods under Section 2.4(b)(i), and/or "Liabilities arising out of Proceedings against HNS [Inc.] and its Affiliates involving the Business initiated prior to the Closing Date and not listed on" the disclosure schedule under Section 2.4(b)(ix).

27. The License Fee Award Damages arise out of, relate to or result from Liability for Taxes during the periods specified in Section 2.4(b)(i), because they require payment for periods prior to the closing of the Purchase Agreement of "taxes … assessments, deficiencies, levies, imposts, duties … or other similar charges of every kind, character or description imposed by any Governmental Authority, and any interest, penalties or additions to tax imposed thereon or in connection therewith," all within the Purchase Agreement's definition of "Taxes."

28. The License Fee Award Damages arise out of, relate to or result from "Liabilities arising out of Proceedings against HNS [Inc.] and its Affiliates involving the Business initiated prior to the Closing Date and not listed on" a specified disclosure schedule under Section 2.4(b)(ix), because the license fee assessment proceeding that led to the License fee Award was an "action, . . . proceeding (including any civil, criminal, administrative, investigative or appellate proceeding), . . . hearing, inquiry, . . . , audit, examination or investigation that is or has been commenced, brought, conducted or heard at law or in equity or before any Governmental Authority" within the Purchase Agreement's definition of "Proceeding," and was initiated in or before March 2005, prior to the closing of the Purchase Agreement.

29. HNS LLC and HCIPL have requested that DTVG indemnify HCIPL for the License Fee Award Damages pursuant to Sections 9.5 and 9.7 of the Purchase Agreement.

30. On March 16, 2020, DTVG summarily denied HCIPL's claim for indemnification. According to DTVG: "The Subject Liability is not a 'Liabilit[y] for Taxes,' because it is not a Tax. The Subject Liability is not a 'Liabilit[y] arising out of Proceedings against HNS [Inc.] and its Affiliates involving the Business initiated prior to the Closing Date . . . ,' because the Subject Liability did not arise out of a Proceeding against HNS [Inc.] and its Affiliates." DTVG offered no other justification or explanation for its denial.

31. DTVG's denial of indemnification is without merit, as the DOT assessments and related proceedings plainly fall within the scope of Section 9.5 of the Purchase Agreement for the reasons stated above.

***DTVG's Failure to Pay Immediately Will Cause Significant Additional Loss and Damage***

32. HCIPL lacks sufficient cash or other assets to pay the Licensee Fee Award while continuing operations.  As a result, unless DTVG complies with its indemnity obligation, HCIPL's inability to pay the award could force it to file an insolvency proceeding in India.  Such a proceeding would disrupt HCIPL's business, as well as the businesses of its customers and the lives of its employees, and would require HCIPL to incur significant additional costs and expenses.

33. In addition, the Indian Supreme Court has threatened to hold HCIPL directors in contempt based on its failure to pay the License Fee Award.  As a result, DTVG's failure to indemnify HCIPL also could result in contempt proceedings against HCIPL directors, along with the imposition of sanctions for contempt, up to and including incarceration.  The additional costs and expenses required to defend HCIPL directors against such proceedings also would be substantial.

## CAUSES OF ACTION

### COUNT I
### (Declaratory Judgment as to Duty to Pay License Fee Award Damages)

34. The foregoing allegations are realleged and incorporated by reference herein.

35. The Purchase Agreement is a valid and enforceable contract, binding on DTVG.

36. HCIPL is an intended third party beneficiary of the indemnification provisions of the Purchase Agreement, including without limitation Section 9.5 and all other terms directly or indirectly incorporated by reference therein.

37. Pursuant to Section 9.5 of the Purchase Agreement, DTVG is obligated to indemnify, defend and hold harmless HCIPL from and against the License Fee Award Damages.

38. DTVG's failure to indemnify HCIPL for the License Fee Award Damages will cause HCIPL to suffer injury and damages, including without limitation liability for nonpayment of the License Fee Award, the potential sanctions against (including incarceration of) HCIPL's directors as a sanction of contempt, the commencement of insolvency proceedings and disruption of its business and other losses, damages, costs and expenses incurred during the pendency of the license fee proceeding.

39. All conditions precedent to HCIPL's assertion and prosecution of this cause of action have been satisfied or waived.

40. An actual and justiciable controversy exists between the parties as to whether DTVG is obligated to indemnify, defend and hold harmless HCIPL from and against the License Fee Award Damages.  Entry of declaratory relief is necessary and would be effective to resolve the controversy.

WHEREFORE, HCIPL prays that this Court enter judgment declaring that DTVG is obligated to make payment in full of the License Fee Award to DOT, and to indemnify, defend and hold harmless HCIPL from and against all other License Fee Award Damages, awarding HCIPL its costs, fees and expenses, and granting HCIPL such other and further relief as may be warranted.

## COUNT II
**(Declaratory Relief as to DTVG's Duty to Defend and Indemnify Generally)**

41. The foregoing allegations are realleged and incorporated by reference herein.

42. The Purchase Agreement is a valid and enforceable contract, binding on DTVG.

43. HCIPL is an intended third party beneficiary of the indemnification provisions of the Purchase Agreement, including without limitation Section 9.5 and all other terms directly or indirectly incorporated by reference therein.

44. Pursuant to Section 9.5 of the Purchase Agreement, DTVG is obligated to defend, indemnify and hold harmless HCIPL and its directors and officers from and against all Damages arising out of, relating to or resulting from the license fee assessments and proceeding.

45. Any failure by DTVG to pay the License Fee Award will cause HCIPL and its directors and officers to incur additional damages, including without limitation the costs of responding to any attempt to impose sanctions on or incarcerate its directors and officers, the costs of commencing and prosecuting insolvency proceedings, and the losses resulting from such proceedings ("Additional Indemnifiable Damages").

46. In the event HCIPL files for insolvency protection, it may lack sufficient resources to incur or pay the Additional Indemnifiable Damages as incurred.  As a result, the continued defense of the license fee proceeding, including taking all action necessary to respond to the October 19 Order, the February 2020 Order, and the March 2020 Order, will require that DTVG fund the Additional Indemnifiable Damages as they are incurred.

47. Because DTVG contests its indemnification obligations as set forth herein, an actual and justiciable controversy exists between the parties as to whether DTVG is obligated to advance the Additional Indemnifiable Damages as they are incurred.  Entry of declaratory relief is necessary and would be effective to resolve the controversy.

48. All conditions precedent to HCIPL's assertion and prosecution of this cause of action have been satisfied or waived.

WHEREFORE, HCIPL prays that this Court enter judgment declaring that DTVG is obligated to advance the Additional Indemnifiable Expenses as they are incurred beginning immediately, award HCIPL its costs, fees and expenses, and grant HCIPL such other and further relief as may be warranted.

## COUNT III
### (Anticipatory Breach or Repudiation of Indemnity Obligation)

49. The foregoing allegations are realleged and incorporated by reference herein.

50. The Purchase Agreement is a valid and enforceable contract, binding on DTVG.

51. HCIPL is an intended third party beneficiary of the indemnification provisions of the Purchase Agreement, including without limitation Section 9.5 and all other terms directly or indirectly incorporated by reference therein.

52. Pursuant to Section 9.5 of the Purchase Agreement, DTVG is obligated to indemnify, defend and hold harmless HCIPL from and against all License Fee Award Damages.

53. DTVG's denial of its obligation to indemnify HCIPL from and against the License Fee Award Damages is an anticipatory breach or repudiation of DTVG's obligations under Sections 9.5 and 9.7 of the Purchase Agreement, causing injury and damage to HCIPL and its directors and officers. Such injury and damage may include, without limitation, liability for nonpayment of the License Fee Award, sanctions against, including the incarceration of, HCIPL's directors, the need to commence insolvency proceedings, and other losses, damages, costs and expenses.

54. All conditions precedent to HCIPL's assertion and prosecution of this cause of action have been satisfied or waived.

WHEREFORE, HCIPL prays that this Court enter judgment awarding HCIPL damages, enjoining DTVG from repudiating or breaching its obligation to indemnify HCIPL for the

License Fee Award Damages, awarding HCIPL its costs, fees and expenses and granting HCIPL such other and further relief as may be warranted.

## COUNT IV
**(Breach of Indemnity Obligation)**

55. The foregoing allegations are realleged and incorporated by reference herein.

56. The Purchase Agreement is a valid and enforceable contract, binding on DTVG.

57. HCIPL is an intended third party beneficiary of the indemnification provisions of the Purchase Agreement, including without limitation Section 9.5 and all other terms directly or indirectly incorporated by reference therein.

58. Pursuant to Section 9.5 of the Purchase Agreement, DTVG is obligated to indemnify, defend and hold harmless HCIPL from and against the License Fee Award Damages.

59. DTVG's denial of its indemnity obligations and failure to pay the License Fee Award after issuance of the October 2019 and February 2020 Orders are a breaches of the Purchase Agreement, causing injury and damage to HCIPL and its directors and officers. Such injury and damage may include, without limitation, liability for nonpayment of the License Fee Award, the sanction, including possible incarceration, of HCIPL's directors, the need to commence insolvency proceedings, and other losses, damages, costs and expenses.

60. All conditions precedent to HCIPL's assertion and prosecution of this cause of action have been satisfied or waived.

WHEREFORE, HCIPL prays that this Court enter judgment awarding HCIPL damages, enjoining DTVG from continuing to breach its obligation to indemnify HCIPL for the License Fee Award Damages, awarding HCIPL its costs, fees and expenses and granting HCIPL such other and further relief as may be warranted.

Dated:  March 27, 2020

Respectfully submitted,

_____/s/ Lisa J. Fried_____
Lisa J. Fried
Garima Malhotra
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY  10017
Tel:  212-909-0658
lisa.fried@hoganlovells.com
garima.malhotra@hoganlovells.com

*Attorneys for Plaintiff*
*Hughes Communications India Private Limited*