UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

HUGHES COMMUNICATIONS INDIA
PRIVATE LIMITED,

                          Plaintiff,

    -against-

THE DIRECTV GROUP, INC.,

                        Defendant.

----------------------------------------------------------------- x

: **OPINION GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

: 20 Civ. 2604 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

The instant dispute arises out of an asset purchase agreement in which Defendant DirecTV Group, Inc. ("Defendant") spun off dozens of its subsidiaries, which included Plaintiff Hughes Communications India Private Limited ("HCIPL" or "Plaintiff"). Plaintiff brings suit against Defendant, seeking indemnification for license fees pursuant to the purchase agreement, which provides indemnification by Defendant "from and against any and all Damages," "arising out of, relating to, or resulting from . . . [] the Excluded Liabilities." The Excluded Liabilities include "[a]ll Liabilities for Taxes," as well as "[a]ll Liabilities arising out of Proceedings against HNS and its Affiliates." I previously denied Defendant's Motion to Dismiss, noting that "there [were] important disputes about the meaning of key terms" in the Purchase Agreement, and that "the law and practices regarding taxes and assessments in India [were] disputed." ECF No. 35.

Having conducted discovery, the Parties now cross-move for summary judgment, with Plaintiff seeking partial summary judgment on Defendant's liability, and Defendant seeking summary judgment absolving it of liability. *See* Motion for Partial Summary Judgment ("Pl. Motion"), ECF No. 59; Motion for Summary Judgment ("Def. Motion"), ECF No. 66. The sole issues for resolution are whether the licenses fees are a "tax," or Plaintiff's contacts with the

1

Indian Department of Telecommunications ("DOT") prior to the Closing Date constituted a

"proceeding," both as defined by the Purchase Agreement.  For the reasons provided below,

Defendant's motion for summary judgment is granted, and Plaintiff's motion for partial

summary judgment is denied.

## BACKGROUND

The undisputed facts are as follows.  Defendant is a satellite service provider, and

Plaintiff is an Indian satellite telecommunications company that operates pursuant to a License

Fee Agreement with the DOT.  *See* Complaint ("Compl."), ECF No. 1; Plaintiff's Undisputed

Material Facts Pursuant to Local Rule 56.1 ("Pl. SUF") ¶¶ 31, 34, ECF No. 65.[1]  On December

3, 2004, Defendant and its wholly-owned subsidiary, Hughes Network Systems, Inc. ("HNS

Inc."), entered into a Contribution and Membership Interest Purchase Agreement (the "Purchase

Agreement") to spin off dozens of Defendant's subsidiaries, including Plaintiff.  Purchase

Agreement ("Purch. Agmt."), ECF No. 61-1.  Under the Purchase Agreement, subsidiary HNS

Inc. contributed its direct and indirect ownership shares in Plaintiff, to a would-be newly-formed

entity, Hughes Network Systems, LLC.  *Id.* at 1; Hughes Network System Organizational Chart,

Ex. HH, ECF No. 69-34.  The transaction closed on April 22, 2005 ("Closing").  Pl. SUF ¶ 10.

As relevant here, the Purchase Agreement contained the following provisions and

definitions:

> Indemnification: to "Newco Indemnified Persons" by Defendant "from and against any
> and all Damages," "arising out of relating to, or resulting from . . . [] the Excluded
> Liabilities."  Purch. Agmt., § 9.5(a) at 54.

> Newco Indemnified Person[]: the Investor, Newco (HNS LLC), and HNS LLC's
> "Subsidiaries and Representatives from time to time (including persons who were
> formerly employees, officers and directors of HNS or any of its Affiliates."  *Id.*, Ex. A, at
> A-8.

---

[1] I refer to Plaintiff and Defendant's respective statements of undisputed facts but include only those confirmed as
undisputed in the respective counterparty's counter-statements.

Damages: include "assessments, losses, damages, costs, Taxes, expenses, Liabilities, judgments, awards, sanctions, penalties, charges and amounts paid in settlement, including reasonable costs, fees and expenses of attorneys, experts, accountants, . . . consultants, . . . and any other agents or representatives" of the indemnified persons. *Id.* at A-3.

Excluded Liabilities: include "[a]ll Liabilities for Taxes of NHS, HNS Europe, HNS UK or the Transferred Subsidiaries, or relating to the Business or the Contributed Assets, for (A) any Tax period that ends on or prior to the Closing Date[.]" Ex. A, § 2.4(b)(i) at A-14. The Excluded Liabilities also include "[a]ll Liabilities arising out of Proceedings against HNS and its Affiliates involving the Business initiated prior to the Closing Date[.]" *Id.* § 2.4(b)(ix) at 5.

Taxes: "all federal, state, local and foreign taxes (including income, profit, franchise, sales, use, real property, personal property, ad valorem, excise, employment, social security and wage withholding taxes) and installments of estimated taxes, assessments, deficiencies, levies, imposts, duties, withholdings, or other similar charges of every kind, character, or description imposed by any Governmental Authority, and any interest, penalties, or additions to tax imposed thereon or in connection therewith." *Id.*, Ex. A, at A-11.

Governmental Authority: encompasses "any foreign [or] .. . domestic . . . governmental authority, quasi-governmental authority, instrumentality, . . . government or self-regulatory organization, commission, tribunal or organization, or any regulatory, administrative or other agency, or any political or other subdivision." *Id.* at A-5.

On March 14, 2005, Plaintiff received a Provisional License Fee Assessment ("Provisional Assessment") from the DOT, seeking payment for underpaid license fees of approximately 245 million rupees (or approximately $5.6 million dollars at the then-current exchange rate) for fiscal years 2001 to 2003. Defendant's Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def. SUF") ¶ 55. License fees were calculated based upon Plaintiff's self-reported revenues and, as of 1999, amounted to 10 percent of Adjusted Gross Revenues ("AGRs"). *Id.* ¶ 46.[2] The Provisional Assessment directed Plaintiff to pay approximately $3.3 million dollars within ten days or communicate with the DOT within 7 days. *Id.* ¶¶ 56, 60; Pl. SUF ¶ 57.

---

[2] Prior to 1999 and the introduction of the Telecom Policy of 1999 ("NTS-99"), telecommunications providers, such as Plaintiff, paid a fixed fee for their licenses. Def. SUF ¶ 37.

Plaintiff did not remit and questioned the amount of the outstanding fees, orally, in writing and in meetings, before and after the closing of the Purchase Agreement.  Def. SUF ¶ 61.  Plaintiff submitted additional documentation for the DOT's consideration, and on January 3, 2006, DOT provided an updated and increased assessment of amount due, approximately 26 million rupees.  Pl. SUF ¶ 64; *see also* ECF No. 64-10.

On February 15, 2006, Plaintiff sued the DOT before the Telecom Disputes Settlement and Appellate Tribunal ("TDSAT") to challenge the DOT's calculations of Plaintiff's AGRs.  ECF Nos. 64-12 (copy of Petition filed before the TDSAT on February 15, 2006), 69-5, 69-27.  Despite a favorable ruling from the TDSAT in August 2007, the Supreme Court of India subsequently reversed that ruling and reinstated the license fee assessments, interest, and penalties imposed by DOT for fiscal years 2001 through 2019.  Pl. SUF ¶ 67; ECF No. 70-11.

Plaintiff alleges that Defendant is obligated to indemnify it for the outstanding license fees with interest and costs, under two separate definitional provisions of the Purchase Agreement—Taxes and Proceedings.  The Parties cross-move for summary judgment on the issue of liability and whether the license fees are a Tax, or Plaintiff's Pre-Closing interactions with the DOT constituted a Proceeding.

## DISCUSSION

### I. Legal Standard

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the" nonmoving party.  *Roe v. City*

*of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (citations omitted).  However, "[m]ere speculation

and conjecture is insufficient to preclude the granting of the motion."  *Harlen Associates v.*

*Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

II. Analysis

  A. The DOT License Fees Are Not An Indemnifiable Tax

    Plaintiff's license fees are imposed pursuant to its License Agreement with the

DOT.  The amount of the fees is based upon Plaintiff's AGRs, which are, in turn, based upon

Plaintiff's self-reported revenues.  The Purchase Agreement does not define Taxes to include

"license fees," nor does it use the words "fees" or "licenses."

    Plaintiff relies heavily on the New York Court of Appeals's decision in *Innophos,*

*Inc. v. Rhodia, S.A.*  There, the court affirmed that "CNA charges"—charges imposed by the

Mexican Comision Nacional de Agua ("CNA") for water usage—constituted a "tax" within the

meaning of the parties' purchase agreement's expansive definition of taxes.  *See Innophos, Inc.*

*v. Rhodia, S.A.*, 10 N.Y.3d 25, 30 (2008).  The *Innophos* purchase agreement defined taxes:

> "all . . . United States federal, state or local or non-United States taxes, assessments, charges, duties, levies or other similar governmental charges of any nature, including all income, gross receipts, employment, franchise, profits, capital gains, capital stock, transfer, sales, use, occupation, property, excise, severance, windfall profits, stamp, stamp duty reserve, license, payroll, withholding, ad valorem, value added, alternative minimum, environmental, customs, social security (or similar), unemployment, sick pay, disability, registration and other taxes, assessments, charges, duties, fees, levies or other similar governmental charges of any kind whatsoever, whether disputed or not, together with all estimated taxes, deficiency assessments, additions to tax, penalties and interest."

*Id.* at 27–28.  The parties' experts agreed that the Mexican Constitution vested ownership over

natural resources, including the water at issue, in the Mexican State.  *Id.* at 30.  Water was

considered "a state-owned natural resource that is regulated by the government in its capacity as

a sovereign, and the exploitation of such is only through the granting of a concession."  *Id.*  The

court held that the CNA charges fell within the purchase agreements definition because they were "similar, though not identical, to a severance tax." *Id.*

Contrary to Plaintiff's assertions, *Innophos* is not "dispositive." Pl. Motion, at 3. The *Innophos* purchase agreement's definition of Taxes was materially different. First, its scope was far broader. It enumerated a much longer and more extensive list of exemplary taxes or governmentally-imposed charges — "assessments, charges, duties, levies or other similar governmental charges of any nature" —followed by an equally extensive and embracive set of examples. Here, the examples of "Taxes" are narrower — "income, profit, franchise, sales, use, real property, personal property, ad valorem, excise, employment, social security and wage withholding taxes." License fees permitting businesses to operate generally are not considered "United States federal, state or local or non-United States taxes, assessments, charges, duties, levies or other similar governmental charges of any nature." Licenses for a business to operate are not "assessments, deficiencies, levies, imposts, duties, withholdings, or other similar charges." The parties point to nothing in the law of India that changes the plain meaning of the contract.

*Franchise Tax*

Plaintiff argues that the license fee charged by the government of India should be classified as a franchise tax, that is, a tax "for the privilege of existing as a corporation," or for a "corporation's privilege of doing business within the boundaries of the taxing authority," of the measured by the annual income or revenues of the corporation within the State. *Bankers Trust New York Corp. v. Dep't of Finance*, 79 N.Y.2d 457, 460 (1992); FRANCHISE TAX, BLACK'S LAW DICTIONARY (11th ed. 2019). A license fee to provide satellite communications is not a franchise tax. A franchise tax typically is applied to a general classification of companies, not to a specific category of business activity. A license fee typically is applied to a specific activity, here, satellite services.

*Excise Taxes*

An "excise tax" is "[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." EXCISE TAX, BLACK'S LAW DICTIONARY (11th ed. 2019). The Dictionary juxtaposes "excise tax" with "income tax" and "property tax." The government of India charged a license fee, not because plaintiff operated a business, but because India, as a sovereign, owned the air above its territory, and charged for the privilege of "moving" communications through the airways.

The term "license" in the parties' agreement appears throughout the Purchase Agreement, but not in the definition of what may constitute a tax. Although there are substantial likenesses between government-issued licenses and franchise and excise taxes, the decision of the parties not to include the license fee charged by the Agreement in the definition of Taxes provided in the agreement speaks volumes. The fact that they did not choose to include "license" as one of the enumerated types of "Taxes" is strong indication that this omission was intentional. Nothing in the extensive discovery of this case shows otherwise.

Accordingly, I find that the DOT license fees are not indemnifiable Taxes within the meaning of the Purchase Agreement.

B. HCIPL's Actions Pre-Closing Are Not An Indemnifiable "Proceeding"

The Purchase Agreement requires Defendant to indemnify Plaintiff for "Liabilities arising out of "Proceedings against HNS and its Affiliates involving the Business initiated prior to the Closing Date[.]" Although the Purchase Agreement broadly defines "Proceeding" to include administrative proceedings, contests, hearings, inquiries, inquests, audits, examinations, or investigations before Governmental Authorities, the indemnification provision only covers to Proceedings "against HNS and its Affiliates." Furthermore, Plaintiff's protestations and discussions concerning the correctness of the license fee, and the extra charges

imposed for late payment, are not a "proceeding against HNS and its Affiliates," nor did

Plaintiff's efforts to reduce the fee charged initiate or constitute a proceeding.  *Cf. Powers v.*

*Stanley Black & Decker, Inc.*, 137 F. Supp. 3d 358, 372 (S.D.N.Y. 2015).

## CONCLUSION

For the reasons discussed in this opinion, I hold that the DOT license fees are

neither an indemnifiable Tax, nor were Plaintiff's Pre-Closing interactions with the DOT an

indemnifiable Proceeding.  Defendant's motion for summary judgment is granted, and Plaintiff's

motion for partial summary judgment is denied.  The Clerk of the Court shall terminate the

motions (ECF Nos. 59, 66) and grant judgment to the defendant, dismissing the complaint with

costs.

SO ORDERED.

Dated:     November 16, 2021                          /s/ Alvin K. Hellerstein
           New York, New York            ALVIN K. HELLERSTEIN
                                         United States District Judge

8